Now we have the divided argument here. This is a case with amicus jurisdictional issue. Do you want to go first on the merits or do you want to go first on the jurisdictional question? Whatever the court would prefer, Your Honor. It probably makes more sense to go with the jurisdictional question first. So you are counsel? My name is Mario Costa. I'm the attorney representing the petitioner in this case. I'm not amicus counsel. So you're going to discuss the merits? I believe that I can discuss either issue that the court is ready to hear argument on, Your Honor. Well, we have given you 10 minutes. Yes, Your Honor. And we have five minutes for amicus counsel to argue on the jurisdictional question. So would you prefer if amicus counsel begins, then, Your Honor? It's up to you all. If we're going to hear the jurisdictional first question first, then we probably have to hear from amicus counsel first. Excuse me.  Thank you, Your Honor. Good morning, my police of court. My name is Robert Huey. I'm pro bono amicus query counsel in this matter. I would like to reserve one minute for rebuttal. In my time this morning, I'd like to address why, under this Court's 2007 precedent in Ramadan, this Court has jurisdiction to review an IJ's application of the statutory hardship language to a set of undisputed facts. And I would also like to give three reasons why this Court's 2005 opinion in Martinez-Rosas does not preclude jurisdiction here today. Well, as I recall in your brief, you thought that Martinez-Rosas, in effect, should be overruled. And, of course, this panel does not have the power to do that. So I was really quite curious that the centerpiece of your argument is that we shouldn't follow one of our own precedential cases. Your Honor, under this Court's precedent in U.S. v. Faulkner, this panel has the power to revisit a question that a previous panel has decided based on issues or arguments that were not raised or addressed in that prior decision. And I believe that this petition presents three such issues. The first of those is whether the hardship determination is best considered a mixed question of law and fact, that becomes a reviewable question of law once the facts are undisputed. Martinez-Rosas did not address this, nor did its predecessors. In fact, the Petitioner's argument was a matter of discretion. That's correct, Your Honor. But it was. Isn't that doesn't that foreclose any further analysis? Your Honor, the issue or the argument was never raised that the hardship language could be a mixed question. And, in fact, in Martinez-Rosas, the Petitioner's conceded that it was a discretionary question. So that issue was simply not before the Court. The second issue that's raised in this petition that was not. So which case do you have your eye on for the proposition that we can go ahead and revisit these issues? United States v. Faulkner, Your Honor. It's cited in my opening brief. At page 11. I'm happy to discuss that case. But the second issue, I believe, that was not addressed in Martinez-Rosas is the fact that the BIA itself considers the hardship determination to be a question of law. The BIA has repeatedly ruled in unpublished opinions that the hardship determination is a question of law. And in published opinions, like In re Mon Real, the BIA has treated the hardship determination as a question of law by relying on legislative history and precedent to determine how to apply the language to a set of facts, and by giving no indication that it's engaged in a discretionary endeavor. These sound like very interesting arguments. My problem with them is not that I can reject them out of hand. It's that our precedent is so clear and our practice so by now well established of treating hardship determinations on relief from removal issues as discretionary and, therefore, not available for our review. I think, for me, you're asking us to ask for a sua sponte en banc call or perhaps for you to make an en banc call after a decision here. I don't see my work clear to get around those decisions absent an en banc decision by this Court that says the Ramadan analysis applies here. Well, Your Honor, I agree that this is an issue that merits en banc review. I believe that there's a tension between this Court's opinion in Ramadan and this draft, which held that the extreme cruelty language is reviewable on one hand, and then on the other hand, this Court's opinion in Martinez-Rosas. In my view, the best way to facilitate en banc review would be through an opinion that expressly recognizes those tensions and exercises jurisdiction. It's not en banc review. It literally went your way. I agree, Your Honor, and I would — Perhaps if Ramadan had gone en banc, but it didn't. Well, I believe this case is a good vehicle for that question, and I would ask, in the event that this Court dismisses or denies the petition, and Mr. Acosta files a petition for re-hearing en banc, leave of this Court to file a brief as amicus counsel in connection with that petition for re-hearing. Okay. Do you want to save 40 seconds for rebuttal?  Thank you, Your Honor.  We'll give him a minute, sir. Good morning. May it please the Court, my name is Mario Acosta, Jr., and I am the attorney representing the petitioners in this case, Mr. Jorge Real and Ms. Ophelia Rodriguez. Your Honor, the petitioners first entered the U.S. back in 1989. They've lived here in this country continuously for almost 20 years. In that time, they've managed to secure employment. They've managed to purchase a home, and they've been blessed with the birth of two U.S. citizen children. In the year 2000, the Immigration Naturalization Service initiated removal proceedings against them. They were charged as being deportable because they were here illegally. Obviously, there was no argument to be made against that charge, so they conceded that they were deportable. And they filed an application for relief, the only application that was available to them, that was available to someone who at that time had been here over 10 years, which was an application for cancellation of removal. Under the INA, an applicant seeking cancellation of removal must meet four requirements before we can even move into a discretionary decision whether to grant. Those four requirements are you must establish 10 years of continuous presence, you must establish 10 years of good moral character, you must show that you haven't been convicted of a crime that renders you inadmissible or deportable under relevant INA provisions, and lastly, you must show that your deportation will cause a qualifying relative exceptional and extremely unusual hardship. That's a very, very ambiguous definition. It's a very, very ambiguous statute. In fact, since 1997, when IRA was passed, over 10 years ago, we have a total of three published decisions from the BIA. We have a matter of Andazola, a matter of Resinas, and a matter of Monreal. Only one of those cases resulted in a grant of relief. Only one of those cases did the Board conclude that this very ambiguous statute, that this very ambiguous hardship element had been met. Yes, Your Honor. It's ambiguous about that language. I mean, it says extreme, and what is it again? It's exceptional and extremely unusual hardship. Well, exceptional does strike me as being particularly ambiguous, and then it's exceptional and what was the other part? Exceptional and extremely unusual hardship, Your Honor. Extremely unusual. Extremely unusual doesn't strike me as all that ambiguous. What unusual means, you know, it happens very, very rarely. It's the kind of thing that is extremely rare. I understand. What's so ambiguous about that? The ambiguity, I believe, lies in the total absence of any case law, from either the BIA or from any circuit court of appeals, defining what that hardship standard is. Unfortunately, because the ---- Well, even if you were to prevail on the notion it's ambiguous, and I think you've got an uphill battle there, where does that get you? Are you heading for a constitutional argument that there's a colorable constitutional claim here? And we believe that this ---- If that's the argument, why don't you get to that argument? And I believe that this case does present a colorable constitutional claim, Your Honor. I'm sorry. What is the constitutional argument? Here the constitutional claim is as follows. The due process clause of the Fifth Amendment applies to all persons inside the United States. It doesn't matter if you're here legally, illegally, if you're merely passing through the country. You've got that right. That right includes ---- among the many fundamental rights included in due process is the fundamental right to family. That includes the fundamental right of a parent to make a decision regarding the care, custody, and control of their children. Just as recent as 2005 ---- True enough, but so what? How does this interfere with that right? Well, if you read Troxell v. Grandel and you understand what this fundamental right to family is, and I believe that if you read that case in conjunction with another Supreme Court decision, Savitas v. Davis, it's been held that or suggested that the right to due process includes the right to judicial review. It's a right to judicial review. This is a right that is being deprived of the petition. Judicial review of what? In our position would be that it's a judicial review of a legal question. There is no dispute that the hardship determination ---- Let me just show that this somehow interferes with a constitutional right. Absolutely. How does this interfere with any constitutional right? What is a constitutional right and how is it being interfered with? Well, again, it's the deprivation of judicial review that we're really trying to focus  on. You have to ---- I believe that if you accept the fact that the Petitioners have a fundamental right as parents to raise their children here, that at the very least, at the very minimum ---- Where is the right to raise their children? That far I follow you. Where is the right to raise their children here? Where is that constitutional right? Well, Your Honor, it has to be here because once they leave the country, then that constitutional right no longer exists. If they take their children to Mexico, it's no longer existing. But they still have the family. It's just the family is living in Mexico, not in the U.S. I understand that. But I believe that because that right attaches here ---- What case says that you have a constitutional right to raise your family in the United States? I don't believe that there is a published case that specifically holds that. But at the same time, there's no published case that says that you don't have a fundamental right to raise your family here. Now, obviously, what ---- That argument strikes me as so ambitious as to be untenable. The better argument, although I'm still having trouble with it, is that the interest is so important, even though it may not be a constitutional right to raise one's children in the United States or be put to the choice of leaving your children here in the United States where they may have better opportunities for education or other things and go home yourself or take them back to Mexico where your children will not have those opportunities. That interest is so important that you have a constitutional right to judicial review of an agency determination that they don't satisfy the criteria set out in the statute. That is to say, I think it's easier to make the argument that they have a constitutional right to judicial review of this agency determination. Yes, Your Honor, and we 100 percent agree with that. That is the argument that we have offered. We're not here ---- That's already a hard enough argument. I understand. So at this ---- I have trouble pronouncing it. Or articulating it. I'm not sure how you can get a constitutional right to judicial review without having underlying substantive constitutional rights. That really strikes me as pulling yourself up by the boots first. Well, maybe if I can try to correlate that with another case that may not involve the same facts or the same legal issue, perhaps I might lend some support to the argument that I'm trying to offer. Our argument is that the right to judicial review should apply when Congress has created a privilege. When Congress has created ---- I mean, obviously, there's no statutory right to stay here. There's no statutory right to cancellation. It's a discretionary form of relief. It's an application. But then again, social security. So our various other forms of, you know, applications that are out there that Congress has to afford certain protections. It's not necessarily that it's an entitlement. But once Congress decides to create a right, to create an application, it has to afford it every single due process right that it requires. And I believe that in this case, if you consider another case, it would be a ---- Really? You don't mean that? You mean you would have a right to trial by jury, for example? I mean, you know, that would mean every due process right. Or you'd have a trial in district court? You don't mean that. What I'm trying to get at, Your Honor, is essentially that. If I can talk about Superintendent of Massachusetts, I want Paul E. V. Hill. That case involved a prisoner who allegedly had been involved in some incident that caused the revocation of 100 good time credits. He had accrued 100 days of good time credits. And the State Disciplinary Board and the supervising warden both affirmed that decision. There was a provision that said that you could not seek judicial review of that decision. He nonetheless filed a complaint with the State court. It made its way all the way up to the Supreme Court, where the Supreme Court in its holding suggested that it would have serious constitutional due process implications for you to hold that there would be no right to judicial review in that situation. Now, ultimately, the outcome was that at the Supreme Court level, a Massachusetts statute was cited to that apparently did provide for judicial review. But I think that if you can, on one hand, hold that a prisoner who was only revoked 100 days of good credit would have a due process right to judicial review of the revocation of 100 good time credits, how can you in the same breath say that someone like the Petitioners doesn't have a right to judicial review of a legal question, a legal determination, whether or not their facts, their undisputed facts, support a finding that they did not meet this hardship standard that's outlined by Congress, a hardship standard? That is to say, your argument is that they have a statutory right not to be removed if they satisfy the criteria of unusual hardship in the statute. Not necessarily, Your Honor. All we're asking for is that the court find that it would have jurisdiction at the very least to review that hardship determination. In prior cases, it's already been clear. No, I understand that. I'm trying to help you with this. I'm sorry. That is to say, your argument is that they have a statutory right to not be removed if they satisfy these criteria. Given that they have that statutory right, that is then a liberty interest. That liberty interest then is something that triggers the due process clause, not to be deprived of life, liberty or property without due process of law, which in your view then means judicial review. Is it possible, however, consistent with the due process analysis for Congress to say, here is your right in the sense of the criteria that need to be satisfied. Yes. But as part of the definition of that right, Congress says that the satisfaction of that criteria or not is to be finally determined by the agency. That is to say, that's part of the description of the right. I understand. But I think that in this new day and age, after the REAL ID Act, you have to consider that before, at the very least, habeas relief was available. And I believe that in our briefs we do outline the fact that even under suspension of deportation, which was the prior application that existed, and the extreme hardship analysis, even if you lost on direct review with the circuit court, you still had available a habeas petition, that then you could challenge the agency's decision for abuse of discretion. You could make the argument that their determination that the hardship standard was not met could be either arbitrary, irrational or contrary to law. Cases cited by the government, like Gutierrez-Chavez v. INS, they support that proposition. That's been eliminated here. And I believe that the court also has to consider the fact that at this time, there is no other judicial — there is no other relief available. There's no other judicial review available. I would point the court's attention respectfully to a recent case decided in January, Fernandez v. Mukasey. It was a case where the alien challenged the requirements for cancer germ removal under the free exercise clause. And in that holding, the court recognized that in 2005 — Is that a Ninth Circuit case? Yes, it is, Your Honor. It was a Ninth Circuit case published, I believe it was January 7th of 2008. In that case, the court recognized that in 2005, over 300,000 applications for cancellation removal were considered by the EOIR nationwide. Three thousand were granted. That's 1 percent. Sounds like extremely unusual, doesn't it? I agree. But here's the question. Are we — It sounds like they're doing about the right job, doesn't it? Well, here's the thing. Are we to assume that because Congress vested this authority with the EOIR that they always get it right? I mean, let's understand that this is the same — That's the nature of discretion. But here's the thing. I believe that when you talk about this hardship analysis, I mean, really, it really is a question of law. It's a question of whether or not these undisputed facts apply to this question of law. And I think you also have to remember, this is the same BIA, the same agency that 10 years ago held that separation of a family was not a factor that could be considered in an extreme hardship analysis. It wasn't until Jara Navarrete v. INS, a case decided by this court, where the court actually held, wait a minute, separation of family might be the single most important factor in a hardship analysis. So it's hard to just assume that the BIA always gets it right, that the BIA never abuses its discretion. Now, again, we're not here to ask the court to supplant its own discretion, its own decision for the attorney generals. Because you have to remember that even if we show those four requirements, even if we can convince the agency that the hardship standard has been met, it doesn't guarantee that they're going to be granted relief. The discretionary part is still there. It's up to the immigration judge, whether in his or her own opinion. But that's your problem. Because if, unlike the prisoner, who then gets his 100 days, all you have is something that is entirely discretionary. Very hard to describe that as a property right. I agree. A property right in the exercise of unfettered discretion. But before we can use it. You agree that once you get there, it's up to the agency, and the agency has unreliable discretion as to whether to grant it or not. We can't dispute that. But the problem is that in this case, that's not what happened. In this case, the judge specifically held. And the BIA, you have to understand, the BIA only affirmed the IGES decision as the hardship. And it's our respectful position that because the BIA only affirmed the immigration judge's decision as it related to the hardship analysis, that's the problem here. The BIA did not in its own power decide discretion. I think we do understand. Thank you. And thank you very much for your time. Thank you. May it please the Court. William Minnick representing the Respondent. Petitioner's separation of powers argument does not raise a colorable constitutional claim because this Court previously rejected the same separation of powers claim in Kaye law and in Dalda law. And in any event, Petitioner testified that his children will accompany them to Mexico so their family will not be separated. Moreover, adverse hardship determinations are discretionary determinations not subject to judicial review. And that has not been altered by the Real ID Act's addition of Section A2D or by this Court's decision in Ramadan. This Court has always held in Martinez-Rosas, in Romero's Torres, that the hardship determination is a subjective discretionary judgment that is unreviewable pursuant to Section A2B. And the Real ID Act does not change the fact that the determination is still a subjective discretionary determination immune from judicial review. And this Court's decision in Ramadan does not change the fact that the hardship determination is still a discretionary determination. You know, I have trouble with the tension between your argument in Ramadan, and it may be that my problem is with Ramadan rather than with what I think is likely to happen in this case. But I have to say that an argument that says, here are your facts, here's the standard, application of law to facts, it's absolutely sort of in our sort of intellectual furniture that application of law to undisputed fact, that's a question of law. That's not discretion. And we keep calling what we're doing here discretion, but if there is a legal standard, which is this unusual hardship and so on, which I'm not sure I want to call it ambiguous, but I'll call it a standard that's necessarily somewhat imprecise just because of the nature of the words and the nature of the judgment, but it is a legal standard. And it's a legal standard that the BIA is applying to these cases. And I'm having trouble seeing how that is discretion except by sort of a play on words. It may be that Congress has told us that it's not judicially reviewable, but it doesn't strike me as just using the ordinary vocabulary of lawyers. It does not strike me as an exercise of discretion. It strikes me as an application of a legal standard to facts. What's your response to that? Well, I think discretionary determinations and mixed questions of law and fact discussed in Ramadan, frankly, are different because this Court has said they're different. I mean, in Ramadan, at six ---- That's Alice in Wonderland, but judges do that sometimes. It's different because I told you so. Yeah, yeah. I mean, but it's ---- I'm not trying to be a smart aleck with the Court. But, I mean, the Court has numerous cases that says the extremely unusual hardship determination, it's just different. In Romero-Torres, in Martinez-Rosas, in numerous other cases, this Court has always uniformly held that that determination is just different because it's a subjective determination on which reasonable minds could differ. And ---- Following up on Judge Fletcher's question, I'm trying to figure out, I mean, it's ---- if this really is a legal standard, it is a highly peculiar one because it turns an unusualness, which is not really an interpretation of words. It is something that relates to the real world. I mean, we don't see most cases. BIA does. So how would we know whether something is unusual or not? It's not like interpreting what 30 days means or interpreting whether something is late, whether it is ---- I forget what the standard is. But anyway, there are all these statutory standards that we can interpret. But unusualness strikes me as something that would be in a very difficult position to interpret. Well, I think that's absolutely correct, Your Honor. More importantly, that's what this Court has repeatedly said, specifically in Romero-Torres, where it says it's a subjective determination. And I think the point you made ---- But it's not really subjective. I mean, one could, if one looked at all the cases, maybe come up with the standards and say, you know, is this case unusual? It's almost like a finding of fact, isn't it? Well, no, because it's ---- again, this Court has said it's different. It's a discretionary determination. It's not like a finding of fact, like whether something happened on a Monday or Tuesday. This Court has consistently said it's different. And in terms of Ramadan, the Court explicitly stated in Ramadan that such discretionary determinations are different from the type of mixed law and fact questions that the Court went on to review in Ramadan. The Court explicitly stated, before turning to the specifics of Ramadan's claim, we note that this case does not involve a challenge to the agency's exercise of discretion. Section 106 does not restore jurisdiction over discretionary determinations. What's the status of Ramadan, by the way? I'm sorry, Your Honor. What is the status of Ramadan? I think I'm not sure that the time for filing cert petition has expired. And my understanding is that the government did not file one. It did expire? It was very close. I ---- I think that's right, Your Honor. The government didn't file. Counsel, you heard the argument made by amicus today, which in effect would ask us to overrule Martinez-Rosas, or at the very least distinguish it. What's your response? Well, I mean, first of all, we think this panel is bound by Martinez-Rosas, but more importantly, we think it's correctly decided. Martinez-Rosas got it right because it acknowledged the jurisdictional bar of A2B. It was consistent with the legislative history of the Real ID Act. That's the conference report that's cited in the government's brief that says the purpose of subsection D was not to restore jurisdiction over discretionary questions. And Martinez-Rosas also recognizes the jurisprudential tradition of recognizing the hardship determination as a discretionary determination that's different and that's not subject to judicial review under A2B. And the enactment of the Real ID Act and A2D didn't make that determination any less discretionary, and Martinez-Rosas recognized that. Because Martinez-Rosas revisited the question after the Real ID Act with regard to A2D and recognized that that statutory subsection doesn't make the hardship determination any less discretionary. In other words, the Court's always said it's a discretionary determination, and that fact isn't changed by the Real ID Act or by Ramadan. And essentially, you wouldn't just have to — he's asking you to revisit Martinez-Rosas, but the Court would also have to overturn Romero-Torres. The other cases, the hold, it's a discretionary determination. So he's asking a lot, and in any event, Martinez-Rosas was correctly decided. The Court got it right. Thank you. Thank you, Your Honor. We'll hear. Did you have a rebuttal? Yes, Your Honor. Okay. We've got about a minute left. Thank you. I just want to speak briefly to the issue of unusualness that Your Honor raised. I believe that this Court can apply unusual as part of the statutory language of exceptional and extremely unusual hardship. I admit that at this stage, this Court doesn't have a broad base of cases on which to apply that language, but it is language that the BIA applies every single day. And the BIA has three published cases and unpublished cases interpreting that language. Are you suggesting that we follow the BIA cases that have interpreted the word unusual? No. Is that your suggestion, that we may or may not be bound by those cases, but it's a good place to start? Is that your argument? Yes, Your Honor. And just as this Court can draw on the BIA's expertise in determining what unusual means, this Court can also draw on the BIA's expertise in determining that the hardship question is a question of law. And I gather your argument is basically that once the BIA has decided enough cases applying this standard, it has then given us interpretation as to what those words mean. And then all we need to do is read their decisions because then that tells us what the standard is. Yes, that's correct, Your Honor. How many of those decisions do we have to read? We've got three published and a zillion unpublished. Well, Your Honor, it's hard to draw the line. I think the hardship language is similar to what the Supreme Court in U.S. v. Ornelas described with respect to probable cause and reasonable suspicion. These are terms that acquire meaning through application. But the fact that they do that doesn't make them discretionary, and it's a court's duty in the end to interpret and apply that language. Okay. Thank you. Thank you. The case is argued. We'll stand for a minute.
judges: Kozinski, O'scannlain, W. Fletcher